Hayward, Assignee v. National Insurance Company.

———o———

JOHN T. K. HAYWARD, Assignee of John A. Lennon, Appellant, *vs.* NATIONAL INSURANCE COMPANY OF HANNIBAL, Respondent.

1. *Agent—Notice to—Principal, when bound.*—Notice given to an agent while his agency exists, and referring to business coming within the scope of his authority, is notice to the principal.

2. *Contracts—Conditions,waiver of—Insurance, policies of.*—A condition in a policy of insurance that any other insurance on such property should avoid that policy, unless the assent of the insurer to such increased insurance was indorsed on the original policy, may be waived by acts or positive declarations, and the insurer may be estopped to set up such forfeiture, where by a course of dealing or by open actions, the insurer has induced the assured to pursue a policy to his detriment. [Hutchins vs. Western Insurance Company, 21 Mo., 97, overruled.]

*Appeal from Hannibal Court of Common Pleas.*

*Arthur B Wilson, Hatch & Hatch,* for Appellant, cited:

| | |
|---|---|
| 52 | 181 |
| 38a | 127 |
| 52 | 181 |
| 47a | 115 |
| 52 | 181 |
| 110 | 100 |
| 51a | 257 |
| 51a | 290 |
| 52 | 181 |
| 123 | 174 |
| 123 | 182 |
| 58a | 212 |
| 52 | 181 |
| 63a | 92 |
| 52 | 181 |
| 132 | 590 |
| 66a | 209 |
| 52 | 181 |
| 73a | 611 |
| 52 | 181 |
| 78a | 437 |
| 79a | 369 |
| 79a | 489 |
| 52 | 181 |
| 162 | 157 |
| 52 | 181 |
| 169 | 2 26 |

Horwitz vs. Equitable Mut. Ins. Co., 40 Mo., 557 ; Franklin vs. Altantic Fire Ins. Co., 42 Mo., 460 ; Combs vs. Hannibal Savings and Ins. Co., 43 Mo., 151; Viele vs. Germania Ins. Co., 26 Iowa, 54, 55 ; Walsh vs. The Ætna Life Ins. Co., 30 Iowa, 142, 145 ; Van Bories, *et al.*, vs. United Life, Fire and Marine Ins. Co. ; Am. Law Reg. N. S., Nov. 1871, p. 680.

The instructions are contradictory and the judgment should be reversed.. (Schneer vs. Lemp, 17 Mo., 142 ; Crole vs. Thomas, 17 Mo., 329 ; Wood vs. St. Bt. Fleetwood, 19 Mo., 529.)

*Geo. H. Shields and Thos. H. Bacon,* for Respondent.

There is no evidence to support the instruction as to notice to Eby as agent, and corporations are not charged with knowledge by their agents, unless it was obtained in the course of their official and usual duties as such agents. (Mechanics Bank vs. Schaumburg, *et al.*, 38 Mo., 228; Gen. Ins. Co. vs. United States Ins. Co., 10 Md., 517–527 ; Story on Agency, § 140, § 140 b. ; Ang. Corp., § 30 b. ; Farrel Foundry vs. Dart, 26 Conn., 376–382 ; Weisser vs. Dennison, 10 N. Y., 68–77 ; McCormick vs. Wheeler, 36 Ill., 114–121 ; Keenan vs. Dubuque Mut. Ins. Co., 13 Iowa, 375–82 ; Forbes vs. Agawam Mut. Ins. Co., 9 Cush., 470–473 ; Ayres vs. Hartford Fire Ins. Co., 17 Iowa, 176–187 ; Bank U. S. vs. Davis, 2 Hill, 451–461; Franc vs. Woods, Tamlyn Rep., 172–176 ; Paley on Agency, p. 261, 3 Am. Ed., 1847 ; 1 Parsons on Contracts, p. 74, 5th Ed. ; Blumenthal vs. Brainard, 38 Vt., 402–409 ; Mellen vs. Hamilton Fire Ins. Co., 17 N. Y., 609 ; Schenck vs. Mercer Co., Mut. Ins., Co., 4 Zab., 447-454 ; Sykes vs. Perry Co. Mut. Ins. Co., 34 Penn. St., 79. )

What constitutes notice ? (Worcester vs. Hartford Ins. Co., 11 Cush., 265 ; Hale vs. Mechanics Ins. Co., 6 Gray, 169 ; Fulton Bank vs. New York and Sharon Coal Co., 4 Paige 127 ; Washington Bank vs. Lewis, 22 Pick., 24–31; Bank of Pittsburg vs. Whitehead, 10 Watts, 397–402; Tibbetts vs. Hamilton Ins. Co., 3 Allen, 569 ; Sykes vs. Perry County Ins. Co., 34 Penn. St., 79 ; Obermeyer vs. Globe Mut. Ins. Co., 43 Mo., 576–579 ; Northup vs. Mississippi Valley Ins. Co., 74 Mo., 440.)

The principal is bound by notice obtained by his agent in the discharge of his duties within the scope of his agency, but not by mere knowledge by the agent, no matter how obtained. (Viele vs. Germania Ins. Co., 26 Iowa, 9; Walsh vs. Ætna Life Ins. Co., 30 Iowa, 142; *Ex parte* Carbis *in re*, Croggon, 4 Deacon and Chitty, 354; Perry on Trusts, 1st Ed., p. 195, § 222; Hill on Trustees, 2d Am., p. 232, side 165; 1st Parsons on Contracts, p. 75; Angell on Corporations, Last Ed., p. 312 to 316; Adams' Equity, p. 322, side 157; 1 Story's Eq. In., 10th Ed., p. 398, § 408; Story on Agency, 7th Ed. p. 161, § 140 c.; Bigelow Life Ins. Index " Agent " Vol. 2.)

VORIES, Judge, delivered the opinion of the court.

This action was brought on a policy of insurance, charged to have been executed by the defendant to John A. Lennon (plaintiff's assignee), on the 23d day of July, 1868, and by which the defendant "in consideration of the sum of twenty-one dollars paid by the said Lennon to defendant, did undertake to and did insure the said John A. Lennon for the period of six months from the date of said policy against loss or damage by fire to the amount of three thousand dollars, on his stock of merchant tailor's goods, consisting," &c.

The pleadings are very lengthy and prolix, but for the purposes of a decision upon the points presented to this court for adjudication, it will only be necessary to state the following issues made by the parties and which were passed on by the court below.

The defendant in its answer, amongst other things pleaded therein, set up the following special defenses : "For a seventh defense herein, defendant says that amongst other conditions in said policy sued on, it was an express condition in said policy as to the property on which said policy was issued, that if said Lennon should have or should thereafter make any other insurance on the property thereby insured. or any part thereof without the consent of the company indorsed thereon, then and in every such case the said Lennon should not be entitled to recover from the company any loss or damage which might accrue in or to the property thereby insured or any part or por-

tion thereof, and defendant says that said Lennon did not keep said express condition, but broke the same in this : That at the time when said Lennon made his request for insurance on which said policy was issued, and at the time said policy was executed and delivered by defendant, the said Lennon had other insurance on said property than the insurance alleged in plaintiff's petition. That is to say, insurance in the———— Insurance company of————:—for the sum of three thousand dollars, without defendant's consent to said . other insurance indorsed upon said policy sued on, nor did defendant ever consent to said or any other insurance. And defendant says that thereby said Lennon became not entitled to recover from defendant any loss or damage which accrued in or to said property or any part or portion thereof."

The eighth defense set up by defendant is the same as the one above set forth except that the breach of the condition is charged to be, that said Lennon after the execution of the policy sued on, and its delivery to said Lennon, made other insurance on said property, in the sum of three thousand dollars in the " Phœnix Insurance Company of Hartford, Connecticut," without the consent, &c.

The plaintiff in his replication to these defenses admits the condition in the policy as stated, and that said Lennon had at the time of the execution of the policy other insurance on the property insured in the sum of $3,000 as stated in the answer, but to avoid the effect of the supposed breach as stated by the defendant, the plaintiff avers, " that before and at the time o f the issuing of said policy defendant well knew and was fully advised of the fact of such other insurance upon said property, and plaintiff avers that defendant at the time it issued its said policy and received the premium therefor from said Lennon, waived the condition in said policy requiring notice of other insurance to be given to it, and furthermore waived the condition of said policy requiring consent of such other insurance to be indorsed on said policy in writing, and plaintiff further avers that defendant at the time aforesaid, consented to said other additional insurance."

To the eighth defense set up in defendant's answer as above stated, the plaintiff replied : " That he admits that after the time of the issuing of the policy sued on, to-wit: on the—— day of —— and at the time of the expiration of the said previous additional insurance above referred to, the said John A. Lennon with the knowledge and consent of the defendant at the time, procured in place of said previous additional insurance the same amount of insurance, to-wit: in the Phœnix Insurance Company of Hartford in the State of Connecticut, and last named insurance was in force at the time of the burning of the goods named in plaintiff's amended petition, of which facts defendant had full knowledge and was fully advised of the renewal thereof in another company, and consented thereto, and plaintiff avers that defendant at said time waived the condition in said policy sued on, set out in defendant's eighth ground of defense, requiring notice of additional insurance to be given to defendant, and then and there waived the requirements of said condition requiring defendant's consent to such additional insurance to be indorsed on said policy in writing."

There were many other issues in addition to the above in the pleadings, but they are not brought in question in this court, so that it will only be required that I should state the substance of the evidence applicable to the foregoing issues, and the rulings of the court thereon, to give a fair understanding of the matters complained of by the appellant, and upon which he relies for a reversal of the judgment in this cause.

It appears from the evidence in the cause, that at and before the execution of the policy sued on to John A. Lennon, said Lennon was doing business in the city of Hannibal, as a merchant tailor, that his stock of goods amounted to from seven to eight thousand dollars, that one David S. Eby also resided in Hannibal and followed the business of an insurance agent, that he was agent for several insurance companies in the Eastern States as well as being agent at Hannibal for defendant.

That said Lennon had taken two policies of insurance from said Eby for three thousand dollars each, one in each of two

Eastern companies for which Eby was agent, and that he had transacted the business with and procured the policies from said Eby.

That in the month of July, 1868, shortly before the making of the policy sued on, Eby told said Lennon that one of his policies of three thousand dollars was about to expire, and that he could not renew it at the same rates that he had been charg ed before. Eby testified that he was the vice president of the defendant and agent for several insurance companies, had his office in the same room with the president and secretary of defendant, that he was in the habit of taking risks for the defendant most generally in consultation with the other officers of the company ; when the risks were out of the ordinary run of business, there was a general consultation ; that he thought he was authorized by virtue of his position as agent to take risks generally. Haynes, the president, and Meadows the sec · retary of defendant were both apprized of the issue of the policy to Lennon upon which the suit is brought, before it wa ⎩ issued. Eby further stated that he was carrying six thou sand dollars on Lennon's stock. A short time previous to the ex pration of one policy he had a conversation with Meadows and Haynes, and told them that there was an opportunity of tak- ing three thousand dollars on Lennon's stock, as he could not renew it in the company that it was in ; after consultation with the company they agreed to take the risk. The company knew that he was carrying six thousand dollars insurance for Lennon at the time, did not know whether he received the premium from Lennon or whether the company received it. When Lennon was informed that one of his policies was about to expire, and that it could not be renewed at the same rate as before, he told Eby that he wanted it renewed and requested him to continue it, said he had too much stock on hand to suffer any of his insurance to drop, he said he had about $8,000 in stock or over, that he wanted the policy continued.

The evidence further shows that after Eby had the consultation with the other officers of defendant, that he made out the policy upon which this suit was brought and when the old

policy had expired he handed it to Lennon who objected to it, said he did not want to be put in the National, but that Eby assured him that it was a good company, and he then received it, telling him that he took it on his word, that he never examined the policy until after the fire which destroyed his goods.

The evidence further tends to show that Eby continued to be agent and vice president of the defendant until after the month of September, 1868. In September, 1868, Eby was as agent of an Eastern company still carrying the three thousand dollar policy on Lennon's goods in addition to the policy in suit, that at said time said policy was about to expire, Eby told Lennon that the policy was about to expire and that he could not renew it at the same rates paid before. Lennon said he wanted the policy renewed. Eby told him to wait a few days and he might still be able to renew it, that afterwards on the day the policy expired Eby told Lennon that he was then prepared to renew the policy. Lennon told him he was too late that he had just insured in another company, and thus renewed the amount of the three thousand dollar policy. Eby told him that that was all right. Eby states that he thinks he was still vice president and acting as agent of defendant at the time of this last conversation.

The foregoing is substantially the evidence in the cause in reference to the knowledge and consent of defendant as to the three thousand dollar insurance on the property in addition to the policy sued on, either at the time of the execution of the policy by the defendant, or at the time that said insurance was changed to the Phœnix company in September afterwards.

The question presented for the consideration of this court is, whether the evidence in this case or the circumstances under which the policy sued on was executed and delivered to Lennon, were such as to amount to a waiver of the condition in the policy, that the policy should be void or no recovery had thereon, if the insured should have other insurance on the same property which was not made known and not indorsed on the policy? And whether the condition was waived that required notice to be given and indorsement made thereof on

the policy of any additional insurance being afterwards made on said property? Or whether the defendant was estopped from setting up the breach of said conditions as a defense to the action?

In my mind there can be very little doubt as to the three thousand dollar policy which existed on the property at the time the policy was executed by the defendant. Eby, the agent and vice president of the defendant, had executed and delivered to Lennon two policies, as agent for Eastern companies, one of which was about to expire. Lennon wanted it renewed, but Eby could not renew it on terms to suit. This being the case he had a consultation with the President and Secretary of defendant, in which he informed them of the whole matter, and that there was a chance for the defendant to take a risk for three thousand on Lennon's goods in place of the policy about to expire. After a full consultation they concluded to take the risk, and the policy was made out before Lennon was seen on the subject and the same afterwards handed to him. He hesitated to receive it until he was assured that the company was a good responsible one; when he accepted the policy without ever looking at its contents, as the evidence shows. It was evidently known by all parties that the remaining three thousand dollar policy was to continue on the property insured, because Lennon had informed them that he could not afford to let any of his insurance be *dropped*. Lennon had a right to expect under these circumstances, that defendant had indorsed on the policy its consent to this remaining policy of three thousand dollars, which good faith required it under the circumstances to have done. So far as this prior insurance is concerned, the case comes exactly within the principle laid down in the case of Horwitz vs. The Equitable Mutual Insurance Company, 40 Mo., 557. The defendant considered the whole matter in reference to the insurance already on the property and took the risk in reference thereto, and they should be estopped from setting up the breach of said condition as a defense to the action, said breach having been waived. In reference to the renewal of the insurance at a time

subsequent to the execution of the policy sued on by the defendant, or the changing the same to another company, the evidence is not so clear of an intention to waive the condition requiring the defendant's knowledge and consent thereof to be indorsed on the policy.   It is contended by the defendant that it was not notified of said subsequent insurance, and that it never in any way assented thereto, while on the other hand, it is contended by the plaintiff that the evidence shows that defendant had full notice of the subsequent insurance and assented thereto and so acted as to induce the said Lennon to rest in security in the belief that his property was fully insured. The main question in the case is, whether notice of this subsequent insurance to the agent who effected the risk for defendant will be considered as a notice to the defendant.   For I think that the evidence clearly shows that Eby was still Vice President and agent for the defendant, at the time that this last insurance was effected.   At least, if there were any doubts as to his agency at the time, that fact ought to have been submitted to the jury by a proper instruction.

The authorities upon this last question are somewhat in conflict and cannot well be reconciled with each other.   The cases referred to by the defendant in the Massachusetts Courts, and other cases referred to, seem to accord with the views entertained by the defendant.

In the case of the General Insurance Company vs. United States Insurance Co., 10th Maryland, 517, the question was as to notice by the corporation of an unrecorded deed of mortgage, so as to affect a subsequent mortgage.   It is there held, that the notice in such case must be sufficient to put a party on enquiry, and that, conceding that a director of the corporation to be affected had notice of the prior mortgage, it did not appear that he had communicated the notice to the board of directors, and was therefore not sufficient; that the notice received by a director of a corporation in a private way or which he acquired from rumor, would not bind the institution, that the case must be so clear as to satisfy the mind that the allowance of the subsequent claim would be a fraud on the party

setting up the first deed, and to the same effect is the case of Farrel Foundry vs. Dart, 26 Conn., 376. The case of the Worcester Bank vs. Hartford Insurance Company, 11 Cush., 265, was a case where the policy sued on, contained a clause almost precisely similar to the clause in the policy of defendant under consideration. It was held that in such case, where a subsequent insurance had been obtained and the agent of the company notified thereof and he had promised the ᐟassured to have the consent of the subsequent insurance entered in the policy but failed to have it done, that still the policy is avoided, the technicalities of the contract not having been complied with, and to the same effect are several other cases in Massachusetts.

It is contended by the defendant in this case that no notice to an agent of the company could operate as notice to the edfendant, unless the agent received the ʼnotice at a time in which said agent was engaged in the execution or performance of the business to which the notice related, or unless it is shown that the agent communicated the notice to his principal. To sustain this view of the case reference is made to several cases.

In the case of McCormick vs. Wheeler, 36 Ill., 114, (referred to by the defendant,) it is held that notice to an attorney of one party which he had received while acting as the attorney of another party is not such notice as will affect his client. It is remarked by the Judge delivering the opinion in the case that " the English authorities manifest a disposition to depart from this rule, but it is deemed by the court to be a rule just in itself."

In the case of the Mechanic's Bank vs. Schaumburg, *et al.*, 38 Mo., 228 : Judge Holmes delivering the opinion of the court says, that " knowledge acquired by the President, Cashier and Teller while engaged in the business of the bank in their official capacity, will be notice to the bank ; so far as either has authority to act for the bank, his acts are the acts of the bank, and his official knowledge is the knowledge of the bank; but mere private information obtained beyond the range

of his official functions will not be deemed notice to the bank."

It is difficult to exactly understand what is meant by the language used in these decisions. The defendant contends that it is meant by the decisions referred to as well as other decisions using similar language, that no notice served on an agent will be effectual to bind his principal, unless the agent should receive the notice while actually engaged in the transaction of the very business to which the notice relates, or unless 'tis shown that it was communicated to the principal. If that should be the proper construction to be given to the language, then it would become impossible that an agent of an insurance company could ever be notified of a subsequent policy of insurance being issued upon the same property before insured by said agent for his principal. Every agent as soon as he takes a risk and issues a policy therefor and delivers it to the insured, dismisses the subject of that policy from his mind. If the insured should afterwards procure a subsequent insurance on the same property and go to the agent to give him notice thereof, he would be sure to find the agent in the transaction of some other business, when according to the construction given to these cases, no notice could be given to the agent because he was not at the time engaged in the particular business to which the notice related, and this, notwithstanding the agent was the only agent of the corporation whose business it was to attend to the very matter to which the notice related.

I think that this is not the proper construction to give to these cases; the meaning must be that the notice must be given to the agent while his agency exists, and it must refer to business which comes within the scope of his authority; when this is the case I think that notice to the agent is notice to the principal, in fact there is no other way to notify a corporation than to notify an agent. A corporation only acts through and by agents, and the proper and only way to give notice to a corporation is to notify an agent, and generally it is sufficient to notify an agent whose proper business is to attend to the matter in reference to which the notice is given.

In the opinion of Judge Holmes in the case of the Bank vs. Schaumburg, *et al.*, above referred to, Story's Agency, § 140, is referred to, from which it may be seen what was meant by the language used in that decision. The section referred to, reads as follows: "Upon a similar ground notice of facts to · an agent is constructive notice thereof to the principal himself, where it arises from or is at the time connected with the subject matter of his agency; for upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal, and if he has not, still the principal, having intrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory on the principal, otherwise the neglect of the agent, whether designed or undesigned, might operate most injuriously to the rights and interests of such party, but unless notice of the facts. come to the agent while he is concerned for the principal, and in the course of the very transaction, or so near before it that the agent must be presumed to recollect it, it is not notice thereof· to the principal; for otherwise the agent might have forgotten it, and then the principal would be affected by his want of memory at the time of undertaking the agency. Notice therefore to the agent before the agency is begun, or after it has terminated, will not ordinarily affect the principal."

This quotation from Story, seems to me to solve the whole question, which is that, *notice to the agent before his agency has begun, or after it has terminated, will not ordinarily affect the principal.* If notice is given before the agency has begun, to affect the principal it must be so near before it that the agent must be presumed to recollect it.

This rule as laid down by Judge Story I think is the correct one, and must be the proper interpretation to be given to the language used in the cases on the subject.

Now, to return to the facts of the case under consideration, we find that Lennon in the month of July, 1868, had procured from one Eby two policies of insurance for $3000 each, one in each of two Eastern companies for which said Eby was agent.

That said Eby was also agent for defendant, having authority to take risks and issue policies for it. That one of the Eastern policies was at said time about to expire. That Eby informed Lennon that he could not renew the policy on the same terms that the policy had been issued before. Lennon insisted that he wanted the policy renewed, that he could not afford to drop any part of his insurance, that he was not then fully insured, that his stock of goods was heavy, &c. Under these circumstances, Eby communicated the facts in reference to this matter to the President and Secretary of defendant, telling them that one of Lennon's policies was about to expire and that there was a chance for defendant to take the risk for three thousand dollars in place of the policy about to expire. After full consultation it was concluded to take the risk for $3000 dollars and a policy was executed to Lennon therefor, without any application on his part therefor, and in fact without his knowledge and that when it was delivered to him, he first objected to receive it, but upon being assured by Eby that the company was a good one he received the policy. At this time it was well known to Eby and defendant, that Lennon intended to continue the one Eastern policy upon his goods, and that he did not intend in any way to lessen or diminish his insurance. This being the case, sometime in the month of September or October of the same year, when the second or last Eastern policy was about to expire, Lennon was informed by Eby (who the evidence shows was still agent of defendant) of the fact and that he could not renew it on the same terms that it had been originally issued. Lennon expressed a desire to have the policy renewed and wanted to keep up his insurance. Eby at this time told him to wait a few days, that he might yet be enabled to renew the policy. Lennon did wait until the day that the policy expired, and then insured in another company in the same amount, and upon meeting with Eby, he informed him of what he had done, and was told by Eby that it was all right.

Now under the circumstances had Eby, the agent, notice at the time of the change of the policy procured from him in the East-

ern company for the policy to the same amount' in the Phœnix Company and did he assent thereto? And did such assent amount to a waiver on the part of the defendant of the condition in the policy, avoiding the same where additional insurance is taken without the consent of defendant indorsed on the policy, as has been before stated? That Eby knew of the new policy, there can be no doubt, in fact it was known by Eby and the officers of defendant at the time of the issuing of the policy sued on, that Lennon intended to continue the whole six thousand dollars of insurance on his stock of goods. The policy of defendant was made with that view, and what was afterwards done was only carrying out the understanding had between the parties at the time; hence when the policy was about to expire, Eby told Lennon that the policy was about to expire, and that he could not then renew it on the same terms, but to *wait* a few days that he might still become able to renew it. Why was it that Eby asked him to wait? It was to my mind, because it was known and expected that if Eby did not renew the policy the insurance would be taken in another company, and this was only a continuation of the original understanding and was expected by Eby, and when he was told that it had been done, he answered that it was all right. Eby was at the time still the agent of the company and notice to him was notice to the defendant.

In a late case in the State of Illinois, (Illinois Mutual Fire Insurance Company vs. Malloy, 50 Ill., 419.) The policy in question contained a clause to this effect: "If the assured shall thereafter make any other insurance on the same property, and should not with all reasonable diligence give notice thereof to the insurers, and have the same indorsed on the policy or otherwise acknowledged by them in writing, the policy shall cease and be of no further effect." The insured in that case did effect an additional insurance on the same property. It was held that it was not sufficient in such case to give notice to a stranger who had long since ceased to be an agent of the company. The court, however, in rendering the opinion says, "Had the party notified been the agent of

the company, his failure to indorse consent on the policy would not have prejudiced the assured; as we said in the case of N. E. Fire and Marine Insurance Co., vs. Schettler, 38 Ill., 166. " It was however further held in that case that it was the duty of the assured to know that the party notified was agent. This case seems to sustain the view that a notice to one who is known to be an agent is sufficient to charge the company, and that where notice is given of an after insurance and no objection made at the time, that the policy will not be thereby forfeited.

I do not say that the fact that Lennon told Eby after he had taken the last policy that he had given the risk to another company, would have been sufficient of itself to constitute a waiver of the condition in the policy in question ; but this fact taken in connection with all of the other facts connected with the transaction, I think are sufficient ; and that to permit the defendant to insist on a forfeiture of the policy under all of the circumstances, would be to enable it to perpetrate a fraud on Lennon.

In the investigation of the case, it has not been overlooked that this court in the case of Hutchinson vs. The Western Insurance Company, 21 Mo., 97, held that a condition in a policy similar to the one under consideration was a condition precedent to the right of the insured to recover on the policy, and that nothing would prevent a forfeiture of the policy, but the actual indorsement of the consent of the insurer to the subsequent insurance. Subsequent cases, however, in this court as well as in other courts which seem to have been well considered, have recognized a more liberal rule in favor of the insured. In these late cases, it has been held that the condition in the policy under consideration as well as other conditions of similar, nature, may be waived by the company, and that the waiver may be made as well by "acts as by positive declarations, and that the company may be estopped under certain circumstances, where by a course of dealing or its open actions, it has induced the assured to pursue a policy to his detriment." (Horwitz vs. The Equitable Mutual Ins. Co., 40 Mo., 557 ; Franklin vs.

The Altantic Fire Ins. Co., 42 Mo., 456; Combs vs. Hannibal Savings and Insurance Co., 43 Mo., 148; Northrup vs. The Mississippi Valley Insurance Company, 47 Mo., 435; Viele vs. Germania Ins. Co., 26 Iowa, 54–55; Walsh vs. The Ætna Life Ins. Co., 30 Iowa, 133; Van Bories vs. The United Life, Fire and Marine Ins. Co., 8 Bush., (Ky.) 133.)

The Common Pleas Court on the trial of this cause instructed the jury "that it devolved on the plaintiff to show that consent was given by the company to such other insurance and indorsed on the policy sued on, and unless the jury find from the evidence that such consent was indorsed on said policy sued on, they will find for the defendant." This instruction assumes that no waiver of the condition in the policy could be made by the company, but the jury are told that unless the indorsement of consent was actually made on the policy, they must find for the defendant. This instruction was clearly wrong, and ignored the whole issues in the case to which it referred as made up by the pleadings. It is, however said, that this instruction was modified by another instruction given by the court; this upon examination will be found to be incorrect; there is no instruction given by the court that could be construed to be a modification of the one above referred to. There is another instruction which tells the jury that if the policy securing the additional insurance had expired before the loss, that then, although the consent of the company to the same, was not indorsed on the policy, the plaintiff might recover. This instruction only applied and could only apply to the insurance existing on the property at the time of the issuing of the policy sued on, as there was no pretense that the subsequently procured policy had expired. And the first instruction referred to was complete in itself, and so far as the instruction given by the court to which reference is made, differs from it, it is merely inconsistent with the other instruction given and calculated to mislead and confuse the jury.

It is not necessary that any further notice should be taken of the instructions given or refused, the case must be reversed for the erroneous view taken of the case in the instruction referred to.

· The other Judges concurring the judgment of the Hannibal Court of Common Pleas is reversed and the cause remanded for a new trial.