# WHITSON, Respondent, v. FARBER BANK, Appellant.

### St. Louis Court of Appeals, March 29, 1904.

1. **BANKRUPTCY: Partnership: Jurisdiction.** In a proceeding to have a partnership adjudged bankrupt, a court of bankruptcy has jurisdiction in the district where one of the partners has resided or has been domiciled or has had his principal place of business for the greater portion of six months preceding the filing of the petition.

2. ———: ———: ———: **Evidence.** Copies of the adjudication and the order of the referee approving the bond of the trustee, duly authenticated under section 3135, Revised Statutes, 1899, were properly admitted in evidence, without affirmative proof that process had been served on either of the partners, though there was evidence to show that one of them had continuously resided in another State for a period antedating the inception of the bankruptcy proceeding and was therefore beyond the reach of process.

3. ———: **Intention of Bankrupt: Knowledge of Creditor.** In an action by the trustee in bankruptcy to avoid a preference, under section 60, paragraph b of the bankruptcy act of 1898, in order to recover, it is necessary to show that the bankrupt intended to give a preference to the defendant and that the defendant had reasonable cause to believe that he so intended.

4. ———: **Notice: Agent.** Notice on the part of an agent that will bind his principal is ordinarily such as is acquired during the agency and, where the preference was a chattel mortgage taken by the preferred creditor, a bank, and the business was transacted by the bank's cashier and president, the knowledge of the intended preference by one put in charge of the mortgaged property for the bank, obtained before he was employed by the bank and while acting as clerk for the bankrupt, is not imputable to the bank.

5. **PRACTICE: Peremptory Instruction.** Where issues of fact were raised by the pleadings and the evidence offered by the plaintiff was oral, it was for the jury to weigh it, and a peremptory instruction to find for plaintiff was properly refused, although no evidence was offered by the defendant upon the issue.

6. **BANKRUPTCY: Preference: Extent of .Liability.** Where a. bankrupt had executed two mortgages on a stock of goods and the first mortgagee took possession and, after selling a sufficient amount· of the goods to satisfy his mortgage, turned the remainder over to the second mortgagee, in a successful action by the trustee to avoid the first mortgage as a preference, the defendant was liable for the value of the entire stock of goods.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge. .

REVERSED AND REMANDED.

*P. H. Cullen* for appellant.

(1)    The papers in the bankruptcy case were inadmissible in evidence because they failed to show that. the Sisk Bros. had been personally served with process and also failed to show that they appeared.   And further the proof was undisputed that one of the alleged bankrupts was a resident of the State of California.. Bors v. Preston, 111 U. S. 252; National Bankruptcy Law, sec. 2a, subsection 1; Brandenburg on Bankruptcy (2 Ed.), p. 21, sec. 4; In re Waukesha Water Co., 8 Am. B. R. 715; In re Laskaris, 1 Am. B. R. 480. (2)    Error was committed by the court in allowing the witness Gilliland to testify to what he heard the witness. Lee state.   Timely objection was made and overruled. The testimony was improperly admitted for two reasons, (a) it was hearsay of the most marked type and (b) it was proving knowledge on the part of the agent before he became an agent.   Scoville v. Glasner, 79 Mo. 448; McDermott v. Railroad, 73 Mo. 516; Anderson v. Valmer, 83 Mo. 406; Hamilton v. Berry, 74 Mo. 177.    (3) It is the settled rule in this State that notice to an agent can effect the principal only when the notice was given or the knowledge  obtained by the  agent  during  the agency.   The principal is not bound by any knowledge the agent possessed before the time he became agent of

his principal. Richardson v. Palmer, 24 Mo. App. 493; Wheeler v. Stock Yards, 66 Mo. App. 272; Haywood v. Ins. Co., 52 Mo. 191; Bank v. Shaumburg, 38 Mo. 228; Day v. Walmsley, 33 Ind. 145; Keomly Bank v. Froman, 129 Mo. 430; Benton v. Bank, 122 Mo. 339; Johnson v. Shortridge, 93 Mo. 227; Bank v. Lovitt, 114 Mo. 519; Manhatton Brass Co. v. Webster, 37 Mo. App. 135. (4) It is well settled that the person receiving the preference must have reasonable cause to believe that a preference was intended. This cause must exist at the time, not afterwards. Bankruptcy Law, sec. 60, subdiv. b.; Gates v. Lebeauvre, 19 Mo. 27. If this preference was not void at its inception it can not be avoided because of subsequent knowledge on the part of defendant's officers. 14 Ency. of Law (2 Ed.), 269. (5) Return of goods or any part thereof must be considered in mitigation of damages, such is the clear holding of all our courts. Loyd v. Tracy, 53 Mo. App. 175; Wood v. Moffitt, 38 Mo. App. 395; Gilbert v. Peck, 43 Mo. App. 582; Spark v. Purdy, 11 Mo. 219. (6) For a full statement of the law on such a state of facts see Sutherland on Damages, where the rule with all its variations is clearly stated and the authorities cited and classified. 1 Sutherland on Dam. (Ed. 1883), sec. 238-240; 3 Sutherland on Dam. (Ed. 1883), sec. 528-537. (7) The defendant took possession under its mortgage on June 7; the petition in bankruptcy was filed August 8. The adjudication in bankruptcy was entered Sept. 26, the defendant had sold sufficient goods to pay its debt by Sept. 8, and on that date, Sept. 8, released all claim on the remainder of the goods and turned them back to Sisk Bros. Defendant turned back the goods 18 days before the adjudication in bankruptcy. It could not lawfully turn them back to any one but Sisk Bros. as the trustee had no right to them until the date of the adjudication. National Bankruptcy Law, sec. 70, subdiv. a; McFarlane Car-

riage Co. v. Wells, 99 Mo. App. 641; In re Wells, 114 Fed. 222, Am. B. R. 75; Mueller v. Nugent, 184 U. S. 1. (8) In order to set aside an alleged preference at the suit of a trustee it must be made to appear that the debtor intended to prefer and the creditor must have reasonable cause to believe that such intention existed in the mind of the debtor. Peck Trustee v. Connell, 8 Am. B. R. 500; Babbett v. Kelley, 96 Mo. App. 534; Brandenburg on Bankruptcy (2 Ed.), sec. 16, p. 567 and sec. 19, p. 570; Collier on Bankruptcy (3 Ed.), 342.

*George Robertson* for respondent.

(1) Under the law and undisputed evidence in this case the plaintiff was entitled to a verdict and the court should have instructed the jury to return a verdict for the plaintiff. No other verdict than that which was rendered could be allowed to stand in this case. Sherman v. Luckhardt, 96 Mo. App. 320; Pepperdine v. Bank, 84 Mo. App. 234; Landis v. McDonald, 88 Mo. App. 335; Babbitt v. Kelley, 96 Mo. App. 529; In re Egbert, 98 Fed. 843; Dutcher et al. v. Wright, assignee, 94 U. S. 553; Troop v. Martin, Assignee, 13 Wall. 40; Rosenfeld v. Seigfried, 91 Mo. App. 169; Harris v. National Bank, 75 S. W. 1052; Fed. Bankruptcy Act, sec. 3, subdivisions 1 and 2; Collier on Bankruptcy, pp. 25 to 35; Bankruptcy Act, sec. 67e. and f.; Collier on Bankruptcy, 422. (2) The certified copy of the judgment of bankruptcy and the certified copies of proceedings before the referee, and of the order approving the bond of the trustee, are conclusive evidence of the vesting in the trustee of the title to the property of the bankrupts. Sec. 21 of the Act of Bankruptcy, clauses d and e; Scrubby v. Morton, 91 Mo. App. 517. Lee was agent of the bank in taking possession of the stock of goods, and the conversation of Gilliland called for with him was admissible, because the admissions of the agent in and about the business which he is transacting for

the principal, is the admission of the principal, and because the knowledge of Lee in and about the business at the time of taking possession of the goods and making the inventory thereof is the knowledge of the bank, because he is its duly authorized agent for that purpose. Underhill on Evidence, sec. 73 a.; 1 Am. & Eng. Ency. of Law (2 Ed.), 691, et seq; 3 Am. & Eng. Ency. of Law (2 Ed.), 845, note 3; Hawk v. Applegate, 37 Mo. App. 32; Midland Lumber Co. v. Kreeger, 52 Mo. App. 418; Hill v. Bank, 86 Mo. App. 590; Fowles v. Loan Co., 86 Mo. App. 103; Rodgers v. Palmer, 102 U. S. 263; Atkison v. Elmore, 77 S. W. 492; In re Beerman (D. C.), 112 Fed. 662; Act of Bankruptcy, clause b, sec. 60.

GOODE, J.—The respondent is a trustee in bankruptcy in charge of the estate of Sisk Bros., and as such instituted this action against the appellant for the value of a stock of merchandise, formerly owned by the firm; which was composed of Robert E. and Geo. W. Sisk and engaged in the mercantile business at Farber, in Audrain county. The value of the stock was alleged to be $2,794.52.

The answer was a general denial.

On May 8, 1902, Sisk Bros. were indebted to the Farber Bank in the sum of $640, to secure which they gave a chattel mortgage on their stock of goods. The mortgage was not recorded until June 9, 1902, prior to which day, viz: June 7, the bank took possession of the property pursuant to the terms of the instrument, put George A. Lee in charge as agent of the bank and proceeded to sell goods, mostly at retail, until September 8; at which date, as enough had been sold for the proceeds to pay the bank's debt, the stock was turned over to J. D. Pitt, who held a second chattel mortgage on it to secure a debt of $970. While the stock was in the bank's possession it had realized from the goods

sold $833.48. Pitt afterwards sold the remainder of the stock at auction to pay his debt. Sisk Bros. had been indebted to the Farber Bank since June 11, 1901, for about the amount of $640 and had given the bank a previous note and chattel mortgage to secure that debt, which were superseded by those executed May 7, 1902. On August 4, 1902, a petition in bankruptcy was filed against the partnership and it was adjudged bankrupt September 26, 1902. At the first meeting of the firm's creditors on November 17, 1902, the respondent Whitson was elected trustee, and qualified November 21st. George W. Sisk was in California when the petition in bankruptcy was filed and service was had on Robert E. Sisk, the other member of the firm. George A. Lee, who was put in charge of the stock by the bank when it took possession, had been previously employed by Sisk Bros. as a clerk. A point is made about this on the appeal in connection with certain testimony and instructions to be adverted to later.

The basis of this action for the value of the goods is that the mortgage was executed by Sisk Bros. when they were insolvent, for the purpose of giving a preference to the bank, was accepted by the bank with knowledge of that purpose and of the insolvency of the mortgagors, and possession of the mortgaged property delivered to the bank under the same circumstances. As the mortgage was executed and the goods were taken by the bank less than four months prior to the petition in bankruptcy, the preference given by those acts would be contrary to the bankrupt act and voidable by the trustee, if the intention of the mortgagors to give a preference was known to the bank, or if it had good cause to believe that was their purpose.

Complaints are preferred against instructions given by the court, which will be noticed below.

The trustee had judgment and the bank appealed.

The appellant complains of the admission in evi-

dence of certified copies of the adjudication that Sisk
Bros. were bankrupts and of the order of the referee in
bankruptcy approving the bond of Whitson as trustee.
Those documents are said to have been erroneously ad-
mitted for the reason that no service of process on
either of the Sisk brothers was affirmatively shown and
one of them was proven to have been continuously in
California for a long period antedating the inception
of the bankruptcy proceeding, and, therefore beyond the
reach of the subpœna of the United States district court
for the Eastern District of Missouri, wherein the pro-
ceeding was instituted.   The residence of Geo. W. Sisk
was immaterial, as the other partner, R. E. Sisk, re-
sided within the federal district.   The Bankruptcy Act
of 1898 declares in section 5, that the court of bank-
ruptcy which has jurisdiction of one member of a
partnership may have jurisdiction of all the partners
and of the partnership and individual property.   It has
been decided that a proceeding to have a partnership
adjudged a bankrupt may be brought in any district
where one of the partners has resided, been domiciled,
or had his principal place of business long enough to
support the jurisdiction of the court of that district,
namely; for the larger portion of six months preceding
the filing of the petition.   In re Blair, 3 Am. B. R. 588,
construing sec. 2, Bankruptcy Act, 1898.

   We overrule, too, the objection that it was necessary
to show affirmatively the partners had been served with
subpoenas or had appeared before they were adjudged
bankrupts, in order to make the exemplifications of the
record of the federal proceedings competent evidence.
The same contention was passed on by this court and
settled against the position of the appellant in Rosen-
feld v. Siegfried, 91 Mo. App. 169.   Those certified
documents were introduced at the trial of this case to
prove a fact collateral to the main issues, and it was
unnecessary to support them by establishing the juris-

diction of the federal court over the bankrupts, as possibly would have been necessary in a suit or proceeding to vacate the judgment. The ruling in the Rosenfeld case was based on section 3135 of the Revised Statutes, 1899, which declares that the records and judicial proceedings of any court of the United States or of any State, attested by the clerk thereof, with the seal of the court annexed, and certified by the judge of the court, shall have such faith and credit given to them in this State as they would have at the place whence said records come. We call attention also to paragraphs *d* and *e* of section 21 of the bankruptcy act as bearing on the question of the admissibility of copies of federal records in bankruptcy cases.

The instructions given are open to just criticism for failing to present the essential issues of fact that arose for the jury's decision and to correctly state the law applicable to them. The important controversies of fact were whether Sisk Bros. were insolvent when the bank took possession of the merchandise on June 7, and whether any officer of the bank, or agent acting for it in the transaction, had reason to believe the intention of said debtors was to give the bank preference over other creditors. Bankruptcy Act, sec. 60. That the bank took possession of the goods and that the mortgage was executed within four months of the filing of the petition in bankruptcy was undenied; and it was undeniable that, if allowed to enforce the mortgage, the bank would obtain a greater percentage of its claim than the other creditors of Sisk Bros. would receive on their claims. It will thus be seen that the issues of fact were few and the law pertinent to them plain. Without reciting all the instructions at length, for they are numerous and prolix, we will point out the errors they contain. One erroneous theory asserted in them consists in making the trustee's right to a verdict depend on a finding by the jury that the bank

intended to obtain a preference when it took the goods, instead of on a finding that Sisk Bros. intended to award the bank a preference and that the bank's officers or agent had reasonable cause to believe such was the intention of the mortgagors. In illustration of that error we will copy an instruction given at the plaintiff's instance:

"The court instructs the jury that if you believe from the evidence that on June 7, 1902, said Sisk Brothers were insolvent and the fact was known to the defendant's cashier, agent or president, or if either of them had reasonable cause to believe they were insolvent and took possession of said stock knowing or having cause to know and intended that the bank was getting a preference, then you will find for the plaintiff."

Another instruction told the jury that if the bank took possession of the merchandise in order to get a preference and such intent was known to either said Sisk Bros. *or if said Sisk Bros. intended to prefer said bank*, the verdict should be for the plaintiff, etc. The meaning of the first clause of that charge is, that if the intention regarding a preference was entertained by the bank and known to one of the Sisk Bros. the preference was void; whereas the law is that the intention to prefer must have been entertained by Sisk Bros. and the bank have had reason to believe they entertained it. The instruction practically reversed the force of paragraph *b* of section 60 of the bankrupt act, which will be quoted below. It was faulty, too, in saying that if Sisk Bros. intended to prefer the bank, the verdict should be for the plaintiff, without requiring the jury to find the bank had cause to believe Sisk Bros. so intended; which is the essence of a preference voidable as having transpired within four months of the petition in bankruptcy.

As we have said above, when the bank took possession of the merchandise it left Lee, who had been a

clerk of Sisk Bros., in charge. The court allowed a witness to testify as to statements Lee made to him when they were invoicing the stock, concerning the amount of indebtedness of Sisk Bros., and an exception was saved to that ruling. The purpose of the testimony was to prove Lee knew Sisk Bros. were insolvent when the bank took possession and affect the bank by his knowledge, though whatever knowledge he had on the subject, was acquired prior to his employment by the bank and while he was still working for Sisk Bros. The court directed a verdict for the plaintiff if the jury found Lee had knowledge that Sisk Bros. were insolvent, even if he obtained that knowledge prior to June 7th, when the bank hired him. To show this was done, we will present an instruction given at the instance of the plaintiff, which was erroneous, not only in adopting that theory, but in again propounding the proposition that an intention regarding a preference cherished by the bank, or its agent, would justify a verdict for the trustee, and in omitting to declare that the officers of the bank must have had reasonable cause to believe the mortgagors intended to prefer:

"The court instructs the jury that the defendant being a corporation can act only by and through its agents and officers and that notice to its agents or officers in and about the business in question is notice to the defendant and that the defendant is bound by the acts of its agents and officers and if you find that at the time said bank took possession of said stock of goods, June 7, 1902, or at any time prior thereto, the said Lee, who took possession of said stock of goods and sold the same for the defendant, or if the cashier at such time, or the president of the defendant at that time knew, or that either of them had the means of knowing that the said Sisk Brothers were insolvent, and that the intent of such agent or agents in taking possession of said stock of goods was that the bank would get a preference over

the other creditors and it was the intent of the Sisk Brothers in making said mortgage or delivering said stock over to the bank to prefer said bank over any of their other creditors, then the plaintiff is entitled to recover and you will find for the plaintiff.''

Lee was not such an agent of the bank as is meant by the bankrupt act in providing that if an agent of a preferred creditor has cause to believe a preference was intended, the transaction contravenes the law. The language of the act is: ''If a bankrupt shall have given a preference and the person receiving it or to be benefited thereby, *or his agent acting therein,* shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person.'' Sec. 60, paragraph *b*. Lee did not act as agent of the bank either in procuring the mortgage, or in taking possession of the goods. Those affairs were transacted by the bank's cashier and its president, and Lee's connection with the matter began when he was entrusted with the stock after the bank had taken it. Unquestionably this fact and the relation he thereafter stood in to the bank as custodian of the goods could not operate to render the preference a violation of the bankrupt law, because he knew, or had reason to believe, while he was working for Sisk Bros., that they were insolvent. To so hold would be to make his knowledge sufficient cause for avoiding transactions with the bank (giving it the mortgage and the stock of goods) that occurred before he represented it in any way. He was not the bank's agent when it took the goods and knowledge he then possessed could not render the transaction fraudulent and voidable because the bank subsequently employed him. What the bankrupt law intends to prevent is the acquiring of a preference by some creditor of an insolvent debtor who had reason to believe the debtor was insolvent when the preference

was given.   Plainly the bank had no reason to believe
Sisk Bros. were insolvent when the merchandise was
taken under the mortgage, merely because Lee, who
afterwards became its employee, then knew they were
insolvent.   Knowledge or notice on the part of a special
agent that will bind his principal is ordinarily such as
is given or acquired during the agency.   Some cases
seem to affect the principal with the agent's knowledge
acquired so short a time before he was employed that
he must have remembered it.   Story states the rule
thus:

   "Upon a similar ground, notice of facts to an agent
is constructive notice thereof to the principal himself,
where it arises from, or is at the time connected with,
the subject-matter of his agency; for, upon general
principles of public policy, it is presumed that the agent
has communicated such facts to the principal; and if
he has not, still the principal, having intrusted the agent
with the particular business, the other party has a right
to deem his acts and knowledge obligatory upon the
principal; otherwise, the neglect of the agent, whether
designed or undesigned, might operate most injuriously
to the rights and interests of such party.   But, unless
notice of the facts comes to the agent while he is con-
cerned for the principal, and in the course of the very
transaction, or so near before it that the agent must
be presumed to recollect it, it is not notice thereof to the
principal, for otherwise the agent might have forgotten
it; and then the principal would be affected by his want
of memory at the time of undertaking the agency.
Notice, therefore, before the agency is begun or after
it has terminated, will not, ordinarily affect the
principal."   Agency (2 Ed.) sec. 140; Anderson v.
Volmer, 83 Mo. 403; Wheeler v. Stock Yards, 66 Mo.
App. 272.   This matter is discussed and cases reviewed
in Hayward v. Ins. Co., 52 Mo. 181.   Suffice to say that
in the present controversy Lee's knowledge of the in-

solvency of Sisk Bros. could not render the surrender of the merchandise a voidable preference, because he had no connection with the bank when it happened.

That error occurred during the trial of this cause is scarcely denied by the respondent's counsel, but he insists the evidence to show Sisk Bros. were insolvent when they delivered possession of the merchandise, that they intended to give a preference by that act, and that the bank knew their condition and intention, is conclusive; and, hence, the judgment plainly appears to be for the right party and ought to be affirmed. Those questions of fact were denied in the answer and contested by the appellant. All the testimony introduced to establish them was oral and we do not understand the law to be that the trial court would have been justified in giving a peremptory instruction to the jury to return a verdict for the respondent. But unless such an instruction was called for, we can not pass over the erroneous rulings made at the trial. When issues of fact are raised by the pleadings and the evidence offered by the plaintiff to sustain the allegations of his petition, is of an oral instead of a documentary character, the jury must weigh it and decide the issues, and of course, must do so in the light of correct instructions regarding the law. This has been declared by the Supreme and appellate courts of this State many times. In Seehorn v. Bank, 148 Mo. l. c. 265, it was said, in regard to the refusal of a peremptory instruction which the plaintiff had asked on the theory that the evidence to support its case was uncontradicted: "In the second place where allegations in the petition are denied by the answer, and evidence is introduced by the plaintiff to sustain the issues upon his part, the defendant is entitled to have the jury pass upon the evidence though he offers no evidence at all." We refer also to Gannon v. Gas Light Co., 145 Mo. 502, and Hugumin v. Hines, 97 Mo. App. l. c. 355, wherein the law is declared

as we have stated it, and to other decisions of the appellate courts of this State cited in the opinions in those cases.

Appellant contends that if liable at all, it was only liable for the value of the goods sold while the stock was in its possession, instead of for the value of the entire stock, and that Pitts must answer for the remnant of the stock that was turned over to him. This proposition came before a federal court for decision in North v. House, 18 Fed. Cas. 328; (Case No. 10310). Rawlings had turned over a stock of merchandise to House in a preferential way and was shortly afterwards adjudged a bankrupt. House sold the goods and besides paying what Rawlings owed him, paid out of the proceeds of the stock about $9,000 to other creditors of Rawlings. The assignee or trustee in bankruptcy sued House for the value of the stock. House claimed to be entitled to a credit for the amount he had paid to other creditors, but the point was ruled against him on the ground that the payments themselves were in fraud of the bankrupt act and gave an undue preference to those creditors. The same reason obtains for holding the Farber Bank responsible for the goods turned over to Pitts. Pitts was thereby enabled to obtain a preference in contravention of the bankrupt law.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.